UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>ROGER FIANDER,<br><br>   Defendant. | NO.  CR-05-2099-RHW-8<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT** |

Before the Court is Defendant Roger Fiander's Motion to Dismiss the Indictment (Ct. Rec. 28). Oral argument was held on October 11, 2005. Defendant was present and represented by Jack Fiander; the Government was represented by Assistant United States Attorney Jane Kirk.

### BACKGROUND

An Indictment was filed against Defendant and his seven co-defendants on August 16, 2005 (Ct. Rec. 1). The Indictment charges that Defendants were engaged in a conspiracy to violate the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). The Indictment also charges that certain Defendants were engaged in a conspiracy to traffic in contraband cigarettes between Idaho and Washington, and did traffic in contraband cigarettes between Idaho and Washington, in violation of the Contraband Cigarette Trafficking Act, 18 U.S.C. §§ 371, 2342(a), & 2 ("CCTA"). Additionally, the Indictment makes the following charges against certain Defendants: Mail Fraud, in violation of 18 U.S.C. §§ 1341 & 2; Travel in Aid of Racketeering, in violation of 18 U.S.C. §§ 1952(a)(1), (3) & 2; and Conspiracy to Launder Money and Money

ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 1

Laundering, in violation of 18 U.S.C. §§ 371, 1956(a)(1), (h), 1957, & 2.

Defendant Fiander is charged with 28 counts. These counts include conspiracy to violate RICO, conspiracy to traffic in contraband cigarettes, traffic in contraband cigarettes, travel in aid of racketeering, conspiracy to launder money, and money laundering. Assuming that all counts rise and fall with his alleged violations of the CCTA, Defendant submits two arguments that the CCTA does not apply to him personally and/or to Yakama Tribal members. First, he asserts that he committed no predicate violation of Washington State cigarette tax laws to support the derivative charge of violating the CCTA. Second, he states that the CCTA does not abrogate the treaty right to travel, given to him as a member of the Confederated Tribes and Bands of the Yakama Nation (the "Yakama Tribe") in Article III of the Yakama Treaty of 1855. Another issue vital to Defendant's motion is whether he is correct in his assumption that all pending charges should be dismissed upon a finding that the CCTA does not apply to his alleged activities.

## DISCUSSION

**A.    Did Defendant violate the Washington State cigarette tax laws?**

Under the CCTA, it is "unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes." 18 U.S.C. § 2342(a). The term "contraband cigarettes" is defined as (1) a quantity in excess of 60,000 cigarettes, (2) which bear no evidence of the payment of applicable state cigarette taxes in the state in which they are found, and (3) which are in the possession of a person not authorized to have said cigarettes.[1] 18 U.S.C.

---

[1] Those authorized to have "contraband cigarettes" include (1) manufacturers and exporters of tobacco products; (2) common or contract carriers transporting the cigarettes under a proper bill of lading; (3) persons authorized by the State where the cigarettes are found to account for and pay cigarette taxes, and who have complied with the accounting and payment requirements; and (4)

ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 2

§ 2341(2).  Therefore, the Government must show not only that Defendant was in possession of a large quantity of cigarettes, but also that he was not authorized to have them under Washington State law.

Washington State law requires that all cigarettes have a stamp affixed to their packaging prior to handling or distribution to enforce collection of the State tax.  RCW 82.24.030.  Nevertheless, Indian tribal organizations may legally sell unstamped cigarettes to enrolled members of the Tribe.  RCW 82.24.260(1)(c).  An Indian tribal organization is a federally-recognized Indian Tribe or tribal entity, including a wholesaler or retailer owned by a tribal member and doing business under a tribal license.  RCW 82.24.010(3).

Although tribal members are entitled to purchase cigarettes on the reservation free of State taxes, tribal sellers are not completely free of the State's system of allocating tax-free status to Tribes.  *Grey Poplars, Inc. v. 1,371,100 Assorted Brands of Cigarettes*, 282 F.3d 1175, 1178 (9th Cir. 2002).  Washington law requires that untaxed, unstamped cigarettes destined for sale to tribal members be pre-approved by the Washington State Department of Revenue.  *Id*.; *see also* WAC 458-20-192(9)(a)(i) (stating that "Indian or tribal sellers may purchase a stock of untaxed unstamped cigarettes for resale to qualified purchasers if the tribal seller gives advance notice under RCW 82.24.250" and defining "qualified purchaser" as "an Indian purchasing for resale within Indian country to other Indians or an Indian purchasing solely for his or her use other than for resale"); WAC 458-20-192(9)(a)(ii) (stating that "[d]elivery or sale and delivery by any person of stamped exempt cigarettes to Indians or tribal sellers for sale to qualified purchasers may be made only in such quantity as is approved in advance by the department"); WAC 458-20-192(9)(a)(iii) (stating that "[a]ny delivery, or attempted delivery, of unstamped cigarettes to an Indian or tribal seller without

---

government agents or instrumentalities having possession of the cigarettes in connection with the performance of official duties.  18 U.S.C. § 2341(2)(A)-(D).

ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 3

advance notice to the department will result in the treatment of those cigarettes as contraband and subject to seizure"). Therefore, a tribal organization that merely possesses unstamped cigarettes absent preapproval by the Department of Revenue violates the Washington cigarette tax statute. *Accord Grey Poplars*, 282 F.3d at 1178 (explaining that "[t]here is no evidence that Grey Poplars possessed the cigarettes with the pre-approval of . . . the Washington State Department of Revenue. The cigarettes are contraband under federal law because they were possessed in violation of the Washington cigarette tax statute and numbered more than 60,000."); *United States v. Gord*, 77 F.3d 1192, 1194 (9th Cir. 1996) (stating that "even if the [defendant] is a tribal organization, the unstamped cigarettes were contraband under the CCTA unless they were preapproved by the Washington Department of Revenue and were sold to Native Americans); *United States v. Baker*, 63 F.3d 1478, 1487 (9th Cir. 1995) (stating that "[u]nder Washington law, mere possession of unstamped cigarettes, even by an Indian, is prohibited if the cigarettes are not preapproved for tax exemption").

Another provision of Washington's revised code relates specifically to transporting cigarettes not bearing Washington State tax stamps: An individual may transport unstamped cigarettes only if he is a licensed wholesaler in his own vehicle *or* if he has given advance notice to the Liquor Control Board ("LCB") that he intends to transport unstamped cigarettes in the State. RCW 82.24.250(1). Additionally, unstamped cigarettes may only be delivered to purchasers or consignees who are authorized to possess unstamped cigarettes. RCW 82.24.250(1), (7). Transportation of cigarettes is treated as a distinct act—different from mere possession of unstamped cigarettes. One who is authorized to transport unstamped cigarettes may also legally possess them within the State during transportation. *See United States v. Smiskin*, 2005 WL 1288001, at *1 (E.D. Wash. 2005).

Although RCW 82.24.250 refers to "transportation" of unstamped cigarettes,

ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 4

the regulation that implements this section and addresses Indians transporting unstamped cigarettes into Washington refers to "delivery" instead of "transportation." WAC 458-20-192(9)(a)(ii). RCW 82.24.250 requires notification of the department "in advance of the commencement of transportation." RCW 82.24.250(1). Its corresponding regulation (the "allocation regulation") states that "[d]elivery or sale and delivery by any person of stamped exempt cigarettes to Indians or tribal sellers for sale to qualified purchasers may be made only in such quantity as is approved in advance by the department." WAC 458-20-192(9)(a)(ii). The definition of "delivery" is "the act of putting into the legal possession of another." *Webster's New Collegiate Dictionary* 298 (2d ed. 1973). Therefore, Washington's allocation regulation requires that an Indian tribal organization notify the State Department of Revenue before it hands over possession of unstamped cigarettes to another Indian or another Indian tribal organization, and does not require notification before "commencement of transportation" as stated in RCW 82.24.250(1).

In his memorandum in support, Defendant focuses on his status as an Indian tribal organization, and discusses at length the exemption from taxation that applies to tribal members and Indian tribal organizations transferring or selling unstamped cigarettes to other tribal members. It has been long accepted that states may not tax cigarettes sold by tribal members to tribal members. RCW 82.24.260(1)(c); *Moe v. Confederated Salish & Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463, 480-81 (1976). However, it has also long been established that states may impose "minimal burdens on Indian businesses to aid in collecting and enforcing" taxes, and specifically cigarette taxes. *Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 159 (1979).

In the Indictment, Defendant's counts appear to rely on several activities, chiefly transporting contraband cigarettes, delivering contraband cigarettes, and transporting proceeds from contraband cigarette trafficking. Under RCW

ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 5

82.24.250, Defendant can be exempt from both the stamping and pre-notification requirements while transporting cigarettes only if he is a licensed wholesaler in his own vehicle. RCW 82.24.250(1). Under the allocation regulation, Defendant cannot ever be exempt from the pre-notification requirement while delivering cigarettes. WAC 458-20-192(9)(a)(ii).

Defendant does not present any evidence that he is a licensed wholesaler who was in his own vehicle while transporting the unstamped cigarettes from Idaho to the Yakama Reservation. He states that the Yakama Tribe authorized and directed his actions and hired him to make the very deliveries for which he is now under indictment. Nevertheless, Defendant did not notify the State Department of Revenue that he was transporting or delivering a large quantity of unstamped cigarettes before delivery, so he violated RCW 82.24.250 and its corresponding regulation. The Indictment also alleges that Defendant transported far more than 60,000 cigarettes. Thus, the cigarettes Defendant allegedly transported from Idaho to Washington were "contraband" under the CCTA. Defendant's first argument for dismissing the Indictment fails.

**B.   Does the CCTA abrogate Defendant's right to travel as established by Article III of the Yakama Treaty of 1855?**

As an enrolled member of the Yakama Tribe, Defendant moves the Court for a finding that the CCTA does not abrogate his right to travel as conferred by Article III of the Yakama Treaty of 1855. Defendant asserts that the State pre-notification requirement is revenue-related and, thus, it is a burden upon his exercise of the treaty right to travel. Under his reasoning, if Defendant was not required to pre-notify the State of his transport of cigarettes into Washington, then his possession of the cigarettes was legal and the cigarettes at issue were not "contraband" under the CCTA. For these reasons, Defendant submits that this Indictment should be dismissed.

The CCTA is a law of general applicability "presumed to apply with equal

force to Indians." *United States v. Baker*, 63 F.3d at 1484. Laws of general applicability cannot apply to Indians in general and to Defendant in particular if their application would abrogate rights guaranteed them by treaty. *Id.* at 1484-85, *quoting Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1115 (9th Cir. 1985). Congress has plenary power over Indian affairs and may abrogate express treaty rights, but it must do so expressly and unequivocally. *Lone Wolf v. Hitchcock*, 187 U.S. 553, 565-68 (1903). In enacting the CCTA, Congress did no such thing. Indeed, its legislative history indicates that the CCTA was "not intended to affect transportation or sale by Indians or Indian tribes acting in accordance with legally established rights." H.R. Rep. No. 95-1778, at 13 n.17 (1978) (Conf. Rep.), *reprinted in* 1978 U.S.C.C.A.N. 5535, 5542. Accordingly, if the Yakama Treaty of 1855 includes an express right that conflicts with the CCTA, the treaty right will control.[2]

Article III of the Yakama Treaty of 1855 was the subject of in-depth analysis in *Yakama Indian Nation v. Flores*, 955 F. Supp. 1229 (E.D. Wash. 1997), *aff'd Cree v. Flores*, 157 F.3d 762 (9th Cir. 1998). Article III states:

> [I]f necessary for the public convenience, roads may be run through the said reservation; and on the other hand, the right of way, with free access from the same to the nearest public highway, is secured to them; as also the right, in common with citizens of the United States, to travel upon all public highways.

---

[2] In *Baker*, the Ninth Circuit rejected an argument that the CCTA was "an impermissible restriction on a *trading* right guaranteed by [the Medicine Creek Treaty of 1854]." 63 F.3d at 1485 (emphasis added). The court explained that "the CCTA does not restrict trading in cigarettes; it makes it a crime to fail to pay applicable state taxes on cigarettes subject to tax." *Id.* Defendant in this case raises a different challenge to the CCTA; he asserts that the CCTA and underlying State law create an impermissible restriction on his right to travel free of restrictions. Therefore, the Ninth Circuit's reasoning in *Baker* is inapposite on this point.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 7

Treaty with the Yakamas, 12 Stat. 951 (1855). The Ninth Circuit has held that this clause "must be interpreted to guarantee the Yakamas the right to transport goods to market over public highways without payment of fees for that use." *Cree*, 157 F.3d at 769.

In *Cree*, the Ninth Circuit analyzed the Yakama Treaty to determine whether Article III exempted tribal members from Washington truck license and overweight permit fees when hauling timber to off-reservation markets over state highways. *Id*. at 764. The court concurred with the district court, basing its decision that Article III secured a right to travel that exempts tribal members from such fees on the district court's factual findings

> that travel was of great importance to the Yakamas, that they enjoyed free access to travel routes for trade and other purposes at Treaty time, and that they understood the Treaty to grant them valuable rights that would permit them to continue in their ways.

*Id*. at 769. The issue presented here is whether this right to travel precludes Washington State from imposing a pre-notification requirement on Yakama Tribal members for the transportation and delivery of unstamped cigarettes. *See United States v. Smiskin*, 2005 WL 1288001, at *3 (E.D. Wash. 2005) (presenting the issue of whether the Yakama Treaty right to travel precludes the State from imposing a pre-notification requirement on Tribal members for the transportation only of unstamped cigarettes).

The Ninth Circuit's binding interpretation of Article III of the Yakama Treaty of 1855, coupled with the revenue-producing purpose of Washington's pre-notification requirement, compel the conclusion that Defendant's treaty right to travel without restriction precludes the pre-notification requirement "in advance of the commencement of transportation." RCW 82.24.250(1); *Smiskin*, 2005 WL 1288001, at *4. However, it does not necessarily render unconstitutional the State's enforcement of this provision through the allocation regulation codified at WAC 458-20-192(9)(a)(ii), for this regulation requires notification at the time of delivery and, thus, does not burden Yakama Tribal members' right to travel

ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 8

unrestricted.

The Yakama's right to travel, as articulated in *Yakama Indian Nation*, is nonexclusive. 955 F. Supp. at 1257. This means the State may still regulate travel by tribal members, along with travel by other members of the general public, for safety and "to preserve and maintain the condition of the roads." *Id*. A pre-notification requirement does not necessarily contravene or burden the right to travel as established in the Yakama Treaty because it does not impose a financial burden on Yakama Tribal members. *Smiskin*, 2005 WL 1288001, at *4. However, the Washington Legislature enacted the pre-notification requirement in RCW 82.24.250 to facilitate the collection of taxes from the sales of cigarettes to non-Indians by Indian smoke shops. *Id*., *citing Baker*, 63 F.3d at 1486. Because its purpose is tax-collection, rather than an important travel-related concern, RCW 82.24.250 conflicts with Defendant's "right to transport goods to market over public highways without payment of fees for that use." *Cree*, 157 F.3d at 769; *see also Smiskin*, 2005 WL 1288001, at *4; *Tulee v. Washington*, 315 U.S. 681, 684-85 (1942) (striking down license fees in conflict with an express treaty right because they were both regulatory and revenue-producing and "their regulatory purpose could be accomplished otherwise").

However, at the time of delivery, Yakama Tribal members are no longer transporting goods over public highways. In fact, the act of delivery encompasses only the transfer of possession, and it may and does regularly occur off the public highways, on private property. While Washington's statute, as written, may unconstitutionally abrogate the Yakama Tribe's treaty right to travel, the regulation requiring notification at the time of delivery and making cigarettes delivered without this advance notice contraband does no such thing. In fact, it makes mere possession of unstamped cigarettes without pre-notification a violation of the CCTA. *See Grey Poplars*, 282 F.3d at 1178 (citing *Baker*, 63 F.3d at 1486-87) *Gord*, 77 F.3d at 1194 (applying this regulation to Indians); *Baker*, 63 F.3d at

ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 9

1486-87 (same).

The Court's decision here is in accord with Judge Shea's holding in *United States v. Smiskin*, 2005 WL 1288001, at *4. The defendants in *Smiskin* were transporting cigarettes from Plummer, Idaho, to the Puyallup Reservation in western Washington. They were apprehended, and the cigarettes were seized, while in transit at the defendants' residence on the Yakama Reservation. *Id*. at *1. Here, Defendant Fiander transported the cigarettes from Plummer, Idaho, to the Yakama Reservation, and completed his transaction by delivering the unstamped cigarettes to tribal retailers. The delivery of these cigarettes rendered them contraband under both State and federal law, while their transport alone would not.[3] *See* WAC 458-20-192(9)(a)(ii). Therefore, the holding in *Smiskin* is distinguishable, due to Defendant's additional alleged activities in this Indictment.

The Government argues that the pre-notification requirement is purely regulatory in nature. It declares that the Supreme Court in *Washington v. Confederated Tribes of the Colville Indian Reservation*, approved State application of "minimal burdens on Indian businesses to aid in collecting and enforcing" taxes. 447 U.S. at 159. The Government's reliance on *Colville* is misplaced regarding Defendant's transport of cigarettes because the Supreme Court in *Colville* was considering the interplay of state taxes with general tribal sovereignty, not an express treaty right. Express treaty rights demand greater deference, as explained

---

[3] The Court's reasoning differs from the argument propounded by the Government in its Correction of Oral Argument Statement (Ct. Rec. 125). The Government seems to assert that the Yakama Treaty right to travel ceases to operate once the cigarettes enter the Yakama Reservation. The Court rejects this reasoning and sees no basis for limiting the Yakama Treaty right in such a manner. The Court bases its holding on the language in the State regulations regarding delivery of cigarettes and the allegations in the Indictment that Defendant Fiander did actually deliver the cigarettes.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 10

above.  However, the delivery of cigarettes is an event that occurs after the transport and travel has ended, and the imposition of minimal burdens to enforce and collect taxes at that time does not infringe on any Treaty right presented here. *See Baker*, 63 F.3d at 1485 (holding that the CCTA does not infringe on any express right to trade).

The Government also submits that the Treaty right to travel, as explained in *Cree* and *Yakama Indian Nation,* should not apply here at all.  The Government emphasizes that the right to travel unrestricted, as explained in *Yakama Indian Nation*, was limited to the transportation of *tribal* goods.  Because Washington was attempting to tax logging trucks carrying tribal timber, the treaty right applied.  The Government avers that the cigarettes in this case do not bear the same and necessary connection to the Treaty right being asserted.

In response, Defendant presents credible evidence of the historical importance of the trade of goods for tobacco to the Yakama Tribe.  Regardless of the Yakama Tribe's long history of tobacco trade, the Government's argument fails because it ignores one of the foundations of federal Indian law: the canons of construction.  The Supreme Court has made clear that treaties with Indian Tribes are to be construed generously.  *E.g.*, *Choctaw Nation v. United States*, 318 U.S. 423, 432 (1943) (stating that treaties and agreements with Indians "are to be construed, so far as possible, in the sense in which the Indians understood them, and 'in a spirit which generously recognizes the full obligation of this nation to protect the interests of a dependent people'"); *Washington v. Fishing Vessel Ass'n*, 443 U.S. 658, 675-76 (1979) (explaining that, because of the United States government's superior bargaining power, a treaty between it and Indian Tribes must be construed "not according to the technical meaning of its words to learned lawyers, but in the sense in which they would naturally be understood by the Indians"); *see also Felix S. Cohen's Handbook of Federal Indian Law* 221-22 (Strickland *et al.* eds.) (2d ed. 1982).

ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 11

Although the Yakama Treaty right to travel unrestricted does not require dismissal of this Indictment because the Indictment alleges that Defendant both transported and delivered the cigarettes, the Court emphasizes that its reasoning does not rest on the Government's proffered theory. Construing Article III narrowly to apply only to those goods coming out of the Reservation, and not to those goods transported to the Reservation by tribal members for sale on the Reservation, would conflict with the broad reading the Court is required to give treaties with Indian Tribes. In *Yakama Indian Nation*, the court interpreted Article III of the Yakama Treaty of 1855 as reserving to the Yakama Tribe its long-established right to travel for purposes of trade. 955 F. Supp. at 1247. "Even if . . . the Treaty was not intended to retain the Yakamas' right to travel to preserve their traditional system of trade and exchange, the Treaty was clearly intended to reserve the Yakamas' right to travel on the public highways to engage in *future* trading endeavors." *Id*. at 1253 (emphasis in original). Applying the appropriate canons of construction, the Court finds that Defendant's right to travel unrestricted, as secured by Article III, applies to Defendant's alleged transport of cigarettes in this case. However, it does not apply to his alleged delivery of contraband cigarettes.

Consequently, the Yakama Tribe's Treaty right to travel includes the right to transport unstamped cigarettes within Washington without pre-notification, but does not include the right to deliver possession of unstamped cigarettes without pre-notification. The State allocation regulation does not restrict or affect travel in any way; instead it imposes minimal burdens on Indian businesses to aid in collecting and enforcing taxes. *Confederated Tribes of the Colville Indian Reservation*, 447 U.S. at 159. Dismissal of an indictment is an act that this Court does not take lightly. The grand jury process and the indictments that result have deep historical and Constitutional roots, and a facially-valid indictment returned by a legally-constituted and unbiased grand jury is sufficient to require a defendant to

ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 12

stand trial. *Costello v. United States*, 350 U.S. 359, 363 (1956). Accordingly, the charges that rely on Defendant's alleged delivery of unstamped cigarettes without pre-notification, along with those charges that rest on the proceeds of contraband cigarette trafficking, shall not be dismissed.

**C.  Defendant's Remaining Charges**

In addition to conspiracy to violate and violation of the CCTA, Defendant Fiander is charged with RICO conspiracy (Count 1), travel in aid of racketeering (Counts 38-46), conspiracy to launder money (Count 47), and money laundering (Counts 58-64). In *Baker*, the Ninth Circuit considered defendants' contention that the CCTA does not apply to Indians. Although it ultimately dismissed this argument and found that the CCTA was a law of general applicability, the court initially stated that "[b]ecause all the charges against the defendants depend on a predicate violation of the CCTA, their convictions must be reversed on all counts if in fact Indians are exempt from the provisions of the Act." *Baker*, 63 F.3d at 1484. Similar to Defendant Fiander, the defendants in *Baker* were charged with conspiring to traffic in contraband cigarettes, trafficking in contraband cigarettes, conspiring to commit racketeering activity, committing racketeering activity, and money laundering. *Id*. at 1482.

As discussed above, the only element of the CCTA that impermissibly abrogates Defendant's treaty right to travel without restriction is the State statute requiring pre-notification prior to transporting unstamped cigarettes in Washington. The remaining Washington State cigarette tax laws and the allocation regulation that implements the transportation statute continue to apply to Defendant and all other Yakama Tribal members, independently and through the CCTA. *See United States v. Booker*, 125 S. Ct. 738, 764 (2005) (stating that courts should "refrain from invalidating more of [a] statute than is necessary," and retain those portions that are "constitutionally valid," "capable of functioning independently," and "consistent with Congress' basic objectives").

ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 13

A fair reading of the Indictment indicates that the counts against Defendant Fiander rest on three distinct acts: (1) his transport of checks representing proceeds from alleged contraband cigarette trafficking from unindicted co-conspirators on the Yakama Reservation, and (2) his transport, and (3) delivery of cigarettes from co-defendant Louie Mahoney to unindicted co-conspirators. The Court has determined that Defendant Fiander's acts of transporting cigarettes was not a violation of the CCTA and was, therefore, not an "unlawful activity." Therefore, charges that rest on this activity alone must fail. However, it appears that all of the counts pending against Defendant Fiander rely at least in part on his transport of checks representing proceeds of contraband cigarette trafficking and on his delivery of cigarettes absent pre-notification.

Accordingly , **IT IS HEREBY ORDERED** that Defendant Fiander's Motion to Dismiss the Indictment (Ct. Rec. 28) is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and forward copies to counsel.

**DATED** this 21st day of November, 2005.

s/ ROBERT H. WHALEY
Chief United States District Judge

Q:\CRIMINAL\2005\Mahoney\Fiander.dismiss.ord.wpd

ORDER DENYING DEFENDANT'S MOTION TO DISMISS * 14