UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

LOUIE MAHONEY, KATHLEEN
S. MAHONEY, CHRISTINE
MAHONEY-MEYER,
MARGARET R. JOSE, GERALD
GEORGE, ROGER FIANDER,

    Defendants.

NOS. CR-05-2099-RHW-1
CR-05-2099-RHW-2
CR-05-2099-RHW-3
CR-05-2099-RHW-6
CR-05-2099-RHW-7
CR-05-2099-RHW-8

**ORDER ON PRETRIAL
MOTIONS**

     A pretrial conference was held in the above-captioned case on August 29, 2006.  Defendant Louie Mahoney was present and represented by Richard Smith; Defendant Kathleen Mahoney was present and represented by Brian Sanderson; Defendant Christine Mahoney-Meyer was present and represented by Scott Chapman; Defendant Margaret Jose was present and represented by Gregory Scott; Defendant Gerald George was present and represented by Zenon Olbertz; and Defendant Roger Fiander was present and represented by Jack Fiander.  Assistant United States Attorney Jane Kirk appeared on behalf of the Government.

     An Indictment was filed against Defendants on August 16, 2005 (Ct. Rec. 1).  The Indictment alleges that Defendants were engaged in a conspiracy to violate the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d).  The Indictment also alleges that certain Defendants were engaged in a conspiracy to traffic in contraband cigarettes between Idaho and Washington, and did traffic in contraband cigarettes between Idaho and Washington, in violation of

the Contraband Cigarette Trafficking Act, 18 U.S.C. §§ 371, 2342(a), & 2
("CCTA").  Additionally, the Indictment alleges the following charges against
certain Defendants: Mail Fraud, in violation of 18 U.S.C. §§ 1341 & 2; Travel in
Aid of Racketeering, in violation of 18 U.S.C. §§ 1952(a)(1), (3) & 2; and
Conspiracy to Launder Money and Money Laundering, in violation of 18 U.S.C.
§§ 371, 1956(a)(1), (h), 1957, & 2.

Before the Court are Defendant Louie Mahoney's Motion for Extension of
Time to File Pretrial Motions and to Strike and Continue the Trial Date (Ct. Rec.
226); Motion to Compel Disclosure of Any and All Promises of Leniency (Ct. Rec.
229); Motion for Disclosure of Identity and Production of Informant(s) (Ct. Rec.
231); Motion for Joinder (Ct. Rec. 233); Motion to Dismiss Case Based on
Discriminatory Enforcement (Ct. Rec. 235); Motion to Suppress (Ct. Rec. 239);
Motion to Dismiss Case (Ct. Rec. 251); Motion to Dismiss Case Based on Treaty
Violations (Ct. Rec. 254); and Motion for Order Declaring 18 U.S.C. §§ 2341 &
2342 Unconstitutional for Vagueness (Ct. Rec. 256).  Also before the Court are
Defendant Christine Mahoney-Meyer's Motion for Discovery (Ct. Rec. 234);
Motion to Dismiss Case as Conduct Was Authorized by Tribal Laws (Ct. Rec.
238); Motion for Extension of Time to File Pretrial Motions and to Strike and
Continue Trial (Ct. Rec. 243); and Motion for Joinder (Ct. Rec. 247).  Defendant
Margaret Jose has filed her Motion to Continue (Ct. Rec. 216); Motion for
Extension of Time to File (Ct. Rec. 217); Motion for Discovery (Ct. Rec. 218); and
Motion for Joinder (Ct. Rec. 219).  Lastly, the Court also considers Defendant
Roger Fiander's Motion to Continue (Ct. Rec. 224) and Motion to Dismiss Case
for Lack of Predicate Violation per RCW 37.12.010 (Ct. Rec. 261).  The Court
addresses the substantive motions below in turn.  The procedural motions and
motions regarding discovery are addressed at the end of this Order.

ORDER ON PRETRIAL MOTIONS * 2

DISCUSSION

**I.    Defendant Louie Mahoney's Motion to Suppress**

Defendant is challenging the warrant that supported the search and seizure of evidence from his home on May 20, 2003.  He argues that the affidavit in support of the search warrant fails to present sufficient facts to conclude that illegal trafficking in contraband cigarettes was occurring between the Coeur d'Alene Indian Reservation and various reservations in Washington.  He states that the affidavit does not establish probable cause because it is based on speculation and there was no nexus between the alleged crimes and the places to be searched and the items to be seized.  The 112-page affidavit was submitted by Ralph Lambright and dated May 14, 2003.

**A.    The Affidavit**

The Lambright affidavit alleges that Defendant Louie Mahoney was engaged in shipping wholesale unstamped cigarettes from the Coeur d'Alene Indian Reservation in northern Idaho to various smoke shops located on Indian reservations throughout Washington State.  Idaho does not require that cigarette cartons sold on Indian Reservations bear tax stamps, while Washington state requires that cigarettes either bear tax stamps (tax-paid, tax-exempt, or approved tribal stamps) or be pre-approved for shipment to the tribal organization/retailer.  RCW 82.24.030 & 82.24.250; WAC 458-20-192(9)(a).  The affidavit alleges that the purpose of Defendant's alleged trafficking scheme is to avoid paying Washington State tax on cigarettes sold to non-Indians at the Washington Indian reservation smoke shops.

The affidavit purports to provide facts sufficient to support a finding of probable cause to issue twelve search warrants for businesses and residences within the Eastern and Western Districts of Washington, as well as the District of Idaho.  These included: Lil' Brown Smoke Shack, Union Gap, Washington; Goodman Road Smoke Shop, Union Gap, Washington; John and Judy Hunter,

Wapato, Washington; LA Nelson/Burke's Distributing, Spokane, Washington; Black Sheep Distributing, Spokane, Washington; Louie Mahoney, Plummer Idaho; Chrissy's Corner, Plummer, Idaho; JKL Enterprises, Plummer, Idaho; Two Yay Yays and Margaret Jose, Plummer, Idaho; Peter Mahoney, Plummer, Idaho; The Warpath/ Smoke Shop/ Trading Post/ Mahoney Petroleum/ Pemmican Inn Restaurant, Lounge & Café/ Warpath One Stop, Plummer, Idaho; Lyle's Smoke Shop, Fife, Washington; Lyle's II Smoke Shop, Tacoma, Washington; and Indian Smoke Shop, Milton, Washington.  The description of the businesses and residences to be searched belonging to Defendant Mahoney is contained in paragraph 30 of the affidavit.

The portions of the affidavit which specifically mention Louie Mahoney or his business, JKL Enterprises, include:

(1) Section V, titled "The Investigation" (¶ 37);

(2) Section VI, titled "Probable Cause for Lil' Brown Smoke Shack; Judy & John Hunter Residence; Yakima Distributing" (¶¶ 44-47);

(3) Section VIII, titled "Probable Cause for JKL and Warpath" (¶¶ 56-58, 60-72, 87-91, 97-109, 117-118, 120-121);

(4) Paragraph 128;

(5)  Section X, titled "Probable Cause for Burke's and Black Sheep" (¶¶ 142-43);

(6) Section XI, titled "Financial Investigation" (¶¶ 156-57 & 163); and

(7) Section XII, titled "Evidence to be Seized" (¶ 165 (A)(6), (7), (16)).
Defendant Louie Mahoney objects to multiple statements made in the affidavit and to general conclusions drawn from the affidavit.

**B.    Discussion**

The Supreme Court established in *Illinois v. Gates* that probable cause to issue a search warrant exists when "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will

ORDER ON PRETRIAL MOTIONS * 4

be found in a particular place." 462 U.S. 213, 238 (1983). Probable cause is based on the totality of the circumstances known to the officers at the time of the search. *Id.* So long as the affidavit evidences a "fair probability or substantial chance of criminal activity," the search warrant must be upheld. *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001) (citation omitted). Great deference is accorded a magistrate's determination of probable cause. *United States v. Espinosa*, 827 F.2d 604, 610 (9th Cir. 1987).

Defendant does not request a *Franks* hearing in his motion. Instead, he appears to be asserting the affidavit does not support a finding of probable cause as it stands.

One general objection to the content of the affidavit and its organization is the grouping of Louie Mahoney with his brother, Peter Mahoney. Peter Mahoney is a defendant in *United States v. Mahoney*, Case No. CR-04-2127-RHW. Defendant Louie Mahoney objects to what he terms an insinuation of a criminal link between himself and Peter Mahoney. Peter Mahoney objected to this insinuation as well. (CR-04-2127-RHW, Ct. Rec. 30). The Mahoney brothers have been estranged for several years. (Lambright Affidavit ("Affidavit"), Ct. Rec. 242, Ex. A, ¶ 120).

In Section VIII of the affidavit, facts supporting probable cause to search Peter Mahoney's businesses and residences are interspersed with references to Louie Mahoney's residence and business operations. After a careful review of the affidavit, the Court finds the Magistrate Judge would have been able to discern the paragraphs that specifically deal with Louie Mahoney, as opposed to other individuals, when making a probable cause determination. Information pertaining to Peter Mahoney, or indeed the other Mahoney siblings, Margaret Jose and Christine Mahoney-Meyer, and other cigarette retailers was sufficiently identifiable to avoid misleading the Magistrate Judge. Section VIII of the affidavit is organized chronologically rather than divided by person or location. While a

ORDER ON PRETRIAL MOTIONS * 5

person-by-person affidavit may have been more accessible to the Magistrate Judge, it was not required by the Fourth Amendment.

Another aspect of Defendant's objection regarding the association with his brother is the lack of evidence in the affidavit that Louie Mahoney transported contraband cigarettes into Washington.  Defendant asserts the evidence of Peter Mahoney's transport of cigarettes taints him.  The only direct evidence of the transport of cigarettes in the Mahoney section of the affidavit involves trips made by Mark Van't Hul, a co-defendant in the Peter Mahoney case, on behalf of Peter Mahoney.  (Affidavit, Ct. Rec. 242, Ex. A, ¶ 74; *see also United States v. Van't Hul*, Case No. CR-04-2130-RHW).

Nonetheless, there is sufficient evidence of Louie Mahoney's sale of cigarettes to Washington retailers, and from this a Magistrate Judge could reasonably infer transport of the contraband cigarettes.  There is sufficient evidence to form probable cause that Louie Mahoney was selling and/or distributing contraband cigarettes, whether or not the affidavit included direct evidence of his transport of the cigarettes as well.  Additionally, whether Louie Mahoney was actually involved in the illegal activity of transporting contraband cigarettes is not material to the determination of probable cause.  The search of his residence was justified if only to gather evidence of the illegal activity of the Washington retailers to whom he sold unstamped cigarettes.  *United States v. Elliott*, 322 F.3d 710, 716 (9th Cir. 2003) ("probable cause to believe that a person conducts illegal activities in the place where he is to be searched is not necessary; the proper inquiry is whether there was probable cause to believe that evidence of illegal activity would be found in the search.").

Accordingly, the Court finds the Magistrate Judge would have been able to determine probable cause existed for a search of Louie Mahoney's residence independent from the evidence of illegal transport of unstamped cigarettes into Washington by his brother and his brother's associate.

ORDER ON PRETRIAL MOTIONS * 6

Defendant also complains about the various declarations of what he terms "suspicion and belief" contained in the affidavit. He correctly asserts that an affidavit must create more than "mere suspicion" that a specific crime was committed. *United States v. Dickerson*, 873 F.2d 1181, 1184 (9th Cir. 1988). Nonetheless, the affidavit contains objective criteria that go beyond the personal beliefs of the applicants for the warrant, and it establishes more than "mere suspicion." The affidavit contains bank records, checks written by and to Louie Mahoney and JKL Enterprises, observations of Defendant's property, and various other concrete evidence that supports the opinions and beliefs expressed. In particular, Defendant objects to statements such as "From Agent Goodpastor's experience with this investigation, other investigative sources and from information contained elsewhere in this affidavit, Agent Goodpastor believes . . ."

The affidavit sets forth Agent Goodpastor's qualifications and experience; this kind of statement when based on an agent's knowledge and experience is permissible in an affidavit to establish probable cause for a warrant. *See United States v. Motz*, 936 F.2d 1021, 1024 (9th Cir. 1991) ("Opinions and conclusions of an experienced agent regarding a set of facts are properly a factor in the probable cause equation under the *Gates* totality of the circumstances approach."). The concrete evidence contained within the affidavit in concert with the opinions and conclusions of Agent Goodpastor does more than establish mere suspicion. In fact, it justifies a finding of probable cause by the Magistrate Judge under the totality of the circumstances approach.

Next, Defendant contends there is not a sufficient nexus between the places to be searched and the items to be seized. Defendant states the affidavit lacks probable cause establishing a link between criminal activity and the residence listed as Louie Mahoney's, 396693 Highway 95, Plummer, Idaho, sufficient to justify a search at that location. However, paragraphs 120 and 121 and the paragraphs they reference clearly establish a link between contraband cigarettes

1   and Louie Mahoney's residence—they discuss deliveries of unstamped cigarettes

2   directly to Louie Mahoney's residence.  The affidavit contains abundant evidence

3   that (1) Louie Mahoney and the Washington retailers to whom he sold cigarettes

4   did not notify Washington authorities of the shipment of untaxed cigarettes; (2) the

5   Washington retailers purchased a large number of cigarettes from Louie Mahoney

6   and JKL Enterprises; (3) cigarettes purchased from the Washington retailers were

7   not stamped and thus were contraband; and (4) unstamped cigarettes were

8   routinely delivered to Louie Mahoney's residence.  The Court finds this and other

9   evidence within the affidavit demonstrates a sufficient connection between

10  criminal activity and Louie Mahoney's residence to justify a finding of probable

11  cause to search that location for the items associated with a business operation

12  involving the trafficking of contraband cigarettes.  *See Elliott*, 322 F.3d at 716

13  ("probable cause to believe that a person conducts illegal activities in the place

14  where he is to be searched is not necessary; the proper inquiry is whether there was

15  probable cause to believe that evidence of illegal activity would be found in the

16  search.").

17        The Government also points out the *Leon* good faith exception further

18  insulates this warrant from challenge.  Certainly, the affidavit was not "so lacking

19  in indicia of probable cause as to render official belief in its existence entirely

20  unreasonable."  *United States v. Leon*, 468 U.S. 897, 923 (1984) (citation omitted).

21        Looking at the totality of the circumstances at the time the officers

22  conducted the search of Louie Mahoney's residence, as represented in the affidavit,

23  it establishes that there was "a fair probability that contraband or evidence of a

24  crime will be found in a particular place."  *Gates*, 462 U.S. at 238.  Accordingly,

25  the Court denies Defendant's Motion to Suppress.

26  **II.   Defendant Louie Mahoney's Motion for Order Declaring the CCTA**
        **Unconstitutional for Vagueness**

27
        Defendant argues that the CCTA, as applied to Indians under Washington
28
    law, is unconstitutionally vague.  A statute is unconstitutionally vague if it does not

(1) describe the crime sufficiently to allow ordinary people to understand what conduct is prohibited, and (2) provide law enforcement with adequate guidelines. *Panther v. Hames*, 991 F.2d 576, 578 (9th Cir. 1993). This argument however, was explicitly foreclosed by the reasoning in *United States v. Baker*, where the Ninth Circuit held:

> The interaction between the CCTA and Washington's tax scheme, on which the CCTA violation is predicated does not involve a complex regulatory scheme with the potential of trapping unwary merchants trading in cigarettes. The law is quite simple . . . . the CCTA and Washington's cigarette tax scheme are not so complex as to create the danger of innocent violation.

63 F.3d 1478, 1492-93 (9th Cir. 1995). Based on this clear holding, the Court is bound by Ninth Circuit precedent on this issue. Furthermore, because the law is so "simple" the Court need not apply the rule of lenity in Defendant's favor.

Defendant submits the Supremacy Clause of the United States Constitution preempts the Washington cigarette tax statutes. He asserts that the Supremacy Clause forecloses the application of Washington State tax laws to Defendant, even though a federal law directs their application. *See* 18 U.S.C. §§ 2341 & 2342. This argument is also foreclosed by *Baker* which holds that the Washington tax scheme is not preempted by federal law. 63 F.3d at 1489-91. Defendant cites to cases that hold various state laws were preempted by federal laws, particularly when applied to Indians, and argues these cases, decided after *Baker*, abrogate its holding. *E.g.*, *Ward v. New York*, 291 F. Supp. 2d 188 (W.D.N.Y. 2003); *Cabazon Band of Mission Indians v. Smith*, 388 F.3d 691 (9th Cir. 2004); *Coeur d'Alene Tribe of Idaho v. Hammond*, 384 F.3d 674, 690 (9th Cir. 2004). Not only are all these cases readily distinguishable from the instant matter, but also *Baker* is directly on point. The reasoning in *Baker* remains sound, and the Court is bound by its holding.

Defendant attempts to distinguish this matter from the facts presented to the Ninth Circuit in *Baker*. Regardless of the different kinds of business operations at issue in both cases, the court's holding in *Baker* is unmistakable and applicable to

ORDER ON PRETRIAL MOTIONS * 9

any enforcement of the CCTA to Indians.[1]

Defendant argues that the Washington pre-notification statutes are overly vague because of the exceptions applicable to "wholesalers."  However, the Government points out that two sections of the Washington Administrative Code aid in understanding and complying with Chapter 82.24 of the Washington Revised Code.  *See* WAC §§ 458-20-186; 458-20-192.  In light of *Baker* and *Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134, 159 (1979), federal law on this issue also has been well-defined. Accordingly, the Court finds that Washington's pre-notification statutes meet the constitutional minimum and denies the Defendant's Motion to Dismiss on this ground.

Defendant also sets forth several arguments within this motion that the CCTA, and through it the Washington State cigarette tax statutes, violates due process and equal protection rights.  Defendant claims his due process rights are violated because of the lack of meaningful notice given by the "vague" Washington statutes.  The Court has already determined that the statutes are not unconstitutionally vague, however, so this argument is precluded.

In addition, Defendant argues his equal protection rights are implicated because the Washington statute treats Indian wholesalers differently from wholesalers licensed within the State.  The Government points out that RCW §§ 82.24.040 and 82.24.250 limit transportation of unstamped cigarettes generally to Washington licensed wholesalers.  An exception is made for persons transporting unstamped cigarettes to Indian tribal organizations.  RCW §§ 82.24.040; 82.24.250.  This exception is not discriminatory; if anything it provides Indian tribal organizations greater rights than non-tribal members.  Additionally, the pre-notification requirement applies to Indians and non-Indians alike.  To the extent

---

[1]  Unless there exist distinguishing factors, such as an express treaty right. *See United States v. Smiskin*, 2005 WL 1288001, at *2-4 (E.D. Wash. 2005).

ORDER ON PRETRIAL MOTIONS * 10

Indian retailers are singled out, it is to ensure they and their tribal-member customers are able to exercise the *greater* rights guaranteed them by treaty. Accordingly, Defendant's equal protection rights are not implicated by Washington's statutes. The Court denies Defendant's Motion to Dismiss on this ground.

### III. Defendant Louie Mahoney's Motion to Dismiss Based on Discriminatory Enforcement of RCW 82.24

In a similar vein, Defendant asserts the United States and the State of Washington are enforcing RCW §§ 82.24 *et seq.* in a discriminatory manner in that they are targeting Native Americans to the exclusion of any other individual or race who may be engaging in the same or similar conduct.

Defendant focuses on a 1995 study on revenue loss in Washington due to cigarette tax evasion. The study revealed that Indian sales of cigarettes accounted for 60 percent of tax loss, military purchases by non-military personnel accounted for 11 percent of the tax loss, and casual smuggling amounted to 29 percent of the tax loss in 1995. Defendant reports that in response to this study, the legislature authorized the Department of Revenue to require Washington State Liquor Control Board ("WSLCB") agents to aid in the enforcement of cigarette tax laws. Defendant claims that state enforcement efforts have focused solely on Native Americans since this time, in spite of the fact that 40 percent of tax loss is a result of other kinds of tax evasion.

Defendant focuses on the State's enforcement of its cigarette tax laws. The Court notes that Defendant is charged with a federal crime. The federal violation is predicated upon a violation of state law, but it is clearly a federal statute. Defendant has not presented any evidence that the CCTA is being discriminatorily or selectively enforced against Native Americans in Washington or elsewhere.

When examining selective prosecution claims, the Ninth Circuit has held that it and other courts

must exercise a high degree of deference to the decision of

ORDER ON PRETRIAL MOTIONS * 11

prosecuting authorities to bring charges, because the Constitution assigns that decision to the executive branch of government. One important restriction on prosecutorial discretion, however, is that "the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" To establish such a violation of equal protection, "[t]he claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'"

To meet the first requirement, of discriminatory effect, [the defendant] "must show that similarly situated individuals of a different [ethnic origin] were not prosecuted." . . . This standard for demonstrating a violation of equal protection is "a demanding one." The showing necessary to obtain discovery is somewhat less: the defendant must produce "some evidence that similarly situated defendants of other races could have been prosecuted, but were not." Even this standard, however, is a "rigorous" one designed to minimize interference with the prosecutorial function.

*United States v. Arenas-Ortiz*, 339 F.3d 1066, 1068-69 (9th Cir. 2003), *cert. denied,* 540 U.S. 1084 (2003) (quoting *United States v. Armstrong*, 517 U.S. 456, 464, 465, 463, 469, 468 (2002)). "Similarly situated individuals" in this case would be non-Indians who were not prosecuted even though they violated the CCTA.

To prove selective prosecution, "[a] defendant may demonstrate that the administration of a criminal law is 'directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." *Armstrong*, 417 U.S. at 465 (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886)). Specifically, "[t]he claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Id.* In turn, "[t]o establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *Id.*

Defendant argues that because Washington State has focused all of its resources on cigarette tax revenues lost through tribal sales, while ignoring the problem of illegal military sales and casual smuggling, the Government is engaged in selective prosecution. This discriminatory allocation of resources, however,

ORDER ON PRETRIAL MOTIONS * 12

even if proved, is one step removed from selective prosecution. The fact that Washington State focuses its resources on Indian cigarette trafficking schemes does not mean that the United States Attorney engages in selective prosecution by indicting Indians engaged in selling cigarettes in Washington. Instead, the Government points to instances where 18 U.S.C. § 2342(a) has been enforced among persons of non-Indian race. *See United States v. Abuhamra*, 289 F. 3d 309, 317 (2d Cir. 2004) (native of Yemen convicted under CCTA); *United States v. Hammoud*, 381 F.23d 316, 353 (4th Cir. 2004) (citizen of Lebanon convicted under CCTA).

Defendant argues that the equal protection clause also prohibits selective enforcement of laws at the investigative stage. He cites to the Supreme Court's dicta in *Whren v. United States*, a Fourth Amendment case, that "the Constitution prohibits selective enforcement of the law based on considerations such as race." 517 U.S. 806, 813 (1996). However, the CCTA does not outlaw "casual smuggling," assuming casual smuggling by definition cannot involve 60,000 or more cigarettes, 18 U.S.C. § 2341; nor does it outlaw small purchases of tax free cigarettes from military bases. Additionally, the enforcement of Washington law is peripheral to this indictment. Defendant has presented no statistical evidence or studies that show Indians are being singled out in CCTA, *i.e.*, federal prosecutions. Defendant simply has not presented any evidence regarding an equal protection violation or discriminatory enforcement involving the CCTA. Accordingly, Defendant's Motion to Dismiss on this ground is denied.

**IV.    Defendant Louie Mahoney's and Defendant Christine Mahoney-Meyer's Motions to Dismiss As Conduct Was Authorized by Tribal Laws and Approved by the U.S. Department of the Interior, Bureau of Indian Affairs**

Defendant Louie Mahoney and Defendant Christine Mahoney-Meyer both argue that any tobacco sales to other Indian reservations were authorized by the Coeur d'Alene Tribal laws which were approved by the U.S. Department of the Interior, Bureau of Indian Affairs. They submit they were both operating under the

ORDER ON PRETRIAL MOTIONS * 13

licensing authority of the Coeur d'Alene Tribal Code, which authorized sales to other Indian reservations. Coeur d'Alene Tribal Code 24-19.01. Specifically, the Code provision reads "[t]he Tobacco and Liquor Outlets shall be authorized to sell cigarettes . . . to other Indian reservations and tribes, provided that the Tribal governing body on the Reservation to which the sales are made has a valid, Bureau of Indian Affairs approved cigarette and/or liquor ordinance." *Id.*

*Baker* recognized that the CCTA was a law of general applicability which was "presumed to apply with equal force to Indians." 63 F.3d at 1484. *Baker* further found that Congress did not intend to exempt Indians from the scope of the CCTA. *Id.* at 1484-86. This Court is bound by *Baker*. The Supreme Court recognized in *Department of Taxation and Finance of New York v. Milhelm Attea & Bros., Inc.*, 512 U.S. 61, 75-78 (1994), that states had the right to tax sales of cigarettes from Indians to non-Indians on Indian lands. The Tribal ordinance does not permit the violation of Washington State tax laws. Additionally, Defendants have not submitted any evidence that they actually possessed then or now possess a license issued by the Coeur d'Alene Tribe for wholesale cigarette sales. Accordingly, the Court denies Defendants' Motions to Dismiss on this ground.

**V.    Defendant Louie Mahoney's Motion to Dismiss Based on Treaty Violations**

Defendant argues that the WSLCB and federal agencies enforcing the CCTA are infringing on his right to free trade with other federally-recognized Indian tribes. *Baker* forecloses the argument that the CCTA infringes on an express treaty right to trade. 63 F.3d at 1485 (holding "the CCTA does not restrict trading in cigarettes; it makes it a crime to fail to pay applicable state taxes on cigarettes subject to tax"). Cases and statutes cited by Defendant are distinguishable. *Mahoney v. Idaho*, 96 Idaho 59 (1974), a state case that is not binding on this Court, was decided before the Supreme Court held taxation of cigarette sales between Indian retailers and non-tribal member purchases was legal in *Colville*, 447 U.S. at 159. Accordingly, it is no longer good law on this point. *Smiskin* is

ORDER ON PRETRIAL MOTIONS * 14

likewise inapplicable in this instance because its holding was limited to those who
benefit from the right to travel established in the Yakama Treaty of 1855.
Similarly, the Indian Trader Statute, 25 U.S.C. § 4301, recognizes the rights of
Tribes to enter into agreements and trade freely. Louie Mahoney is not a Tribe.
Accordingly, the Court denies Defendant's Motion to Dismiss Based on Treaty
Violations.

**VI.    Defendant Louie Mahoney's Motion to Dismiss**

    In Mr. Mahoney's last substantive motion, he urges the Court to find that the
CCTA, 18 U.S.C. § 2341 *et seq.*, does not apply to Indians.  This argument is
foreclosed by the Ninth Circuit's holding in *Baker* to the contrary.  63 F.3d at 1486.
Defendant emphasizes different language in the footnote of the House Conference
Report regarding the CCTA's application to Indians to argue his point that the
Ninth Circuit got it wrong.  *See id.* at 1485-86 (citing H.R. Conf. Rep. No. 1778,
95th Cong., 2d Sess. 1, 9 n.1, *reprinted in* 1978 U.S. Code & Cong. Admin. News
5535, 5538) (stating "[a] fair reading of the footnote indicates Congress merely
intended not to preempt rights granted to Indians by the states to transport and
distribute untaxed cigarettes").  However, the Court is bound by Ninth Circuit
precedent, and *Baker* clearly holds that the CCTA applies to Indians. *Id.* at 1486.
Accordingly, the Court denies Defendant's Motion to Dismiss.

**VII.   Defendant Roger Fiander's Motion to Dismiss Indictment**

    Defendant moves the Court to dismiss the Indictment.  He bases his motion
in part on the Court's holding and reasoning in its prior Order denying his motion
to dismiss (Ct. Rec. 142).

**A.    Prior Order Denying Defendant's Motion to Dismiss**

    In his earlier motion to dismiss, Defendant, who is a member of the Yakama
Tribe, requested dismissal based on his treaty right to travel as it was defined by
the Ninth Circuit in *Cree v. Flores*, 157 F.3d 762 (9th Cir. 1998).  In *United States
v. Smiskin*, Judge Shea determined that Yakama Tribal members' treaty right to

ORDER ON PRETRIAL MOTIONS * 15

1  travel preempted the application of Washington's prohibition against transporting

2  cigarettes without pre-approval from the WSLCB.  2005 WL 1288001, at *3.  The

3  Court found that this case was distinguishable from that in *Smiskin* because

4  Defendant was not accused only of transporting contraband cigarettes, but also of

5  delivering the cigarettes to tribal retailers within the Yakama Reservation.  Because

6  Defendant did not give notice of his possession and delivery of unstamped

7  cigarettes, which are acts not contemplated or protected by the Yakama treaty right

8  to travel without restriction, the cigarettes were contraband and the Indictment

9  valid.  (*See* Ct. Rec. 142).

10      **B.    Discussion**

11      Defendant now states that the Washington State Legislature did not extend

12  its cigarette tax pre-notification statute to the conduct of tribal members on tribal

13  land within Indian reservations.  Therefore, there was no predicate violation of

14  state law, and the indictment must be dismissed.

15      States generally do not have civil and criminal jurisdiction over Indians

16  within Indian country absent federal legislation specifically granting it.  *Worcester*

17  *v. Georgia*, 31 U.S. 515, 559-60 (1832).  In what is commonly referred to as Public

18  Law 280, H.R. Rep. No. 848, 83rd Cong., 1st Sess., 5-6 (1953) (codified as

19  amended at 18 U.S.C. § 1162, 25 U.S.C. §§ 1321-1326, 28 U.S.C. §§ 1360, 1360

20  note), Congress granted states such as Washington, the constitution of which

21  contained a disclaimer of jurisdiction over Indian Country, permission to amend

22  "where necessary" their state constitutions to remove any legal impediment to the

23  assumption of general jurisdiction.  *Washington v. Confederated Bands & Tribes of*

24  *Yakima Indian Nation*, 439 U.S. 463, 471-74 (1979) (*Confederated Bands*); *see*

25  *also State v. Sohappy*, 110 Wash. 2d 907, 909-10 (1988) (discussing the effect of

26  RCW § 37.12.010 on State jurisdiction over Indians on trust lands).  Relevant to

27  this case, the Washington Legislature in 1963 enacted Chapter 36.  *Confederated*

28  *Bands*, 439 U.S. at 475.  Chapter 36 extended at least some jurisdiction over all

ORDER ON PRETRIAL MOTIONS * 16

Indian lands within the state. *Id.*

> Full criminal and civil jurisdiction to the extent permitted by Pub. L. 280 was extended to all fee lands in every Indian reservation and to trust and allotted lands therein when non-Indians were involved. Except for eight categories of law, however, state jurisdiction was not extended to Indians on allotted and trust lands unless the affected tribe so requested. The eight jurisdictional categories of state law that were thus extended to all parts of every Indian reservation were in the areas of compulsory school attendance, public assistance, domestic relations, mental illness, juvenile delinquency, adoption proceedings, dependent children, and motor vehicles.

*Id.* at 475-76 (emphasis added).

Defendant asserts that his delivery of the cigarettes at issue in the Indictment occurred on tribal lands held in trust by the United States. Therefore, just as the State could not prosecute a reservation Indian for assault on tribal land in *Sohappy*, Defendant asserts the cigarette notification statute likewise cannot apply to a reservation Indian on tribal land. 110 Wash. 2d at 909-10.

The Government argues that Defendant is confusing the state's authority to enforce a statute with the reach of the statute. It proclaims that the cigarette tax statutes apply with full force to Indians on trust lands, but that RCW § 37.12.010 simply limits the State's ability to enforce it there. The Government cites to *Colville*, 447 U.S. at 159, for the proposition that the State may impose at least minimal burdens on Indian businesses to aid in collecting and enforcing a valid tax. The Supreme Court there noted that "[t]here is no automatic bar [ ] to Washington's extending its tax and collection and recordkeeping requirements onto the reservation in the present cases." *Id.*

The Government also cites to *Oklahoma Tax Commission v. Citizen Band of Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505 (1991). There, the Supreme Court considered whether Oklahoma could, via a law suit, collect sales taxes due for tribal cigarette sales to non-tribal members. *Id.* at 507-08. The Court stated that tribal sovereign immunity "does not excuse a tribe from all obligations to assist in the collection of validly imposed state sales taxes." *Id.* at 512 (citing *Confederated Bands*). The Court upheld the state's authority to tax cigarette sales

ORDER ON PRETRIAL MOTIONS * 17

1  to non-members on the reservation but denied the state the right to sue the Tribe to

2  recover any unpaid tax.  *Id.* at 512-13.  Therefore, the Government asserts that

3  sovereign immunity may limit the actions state agents may take on tribal lands to

4  enforce the state's laws, but it in no way limits the reach of the state's taxing

5  authority.

6       The *Potawatomi* case appears distinguishable from the present

7  circumstances.  Defendant is not basing his argument on tribes' inherent sovereign

8  immunity.  Rather, he is basing his argument on RCW § 37.12.010, which

9  expressly limits the State's "assumption of jurisdiction," except in certain areas not

10  relevant here, such that the State may not exercise its jurisdiction over "Indians

11  when on their tribal lands or allotted lands within an established Indian reservation

12  and held in trust by the United States[.]"  RCW § 37.12.010.  This language

13  provides a stronger argument that the State's laws may not be enforced against

14  Indians on tribal lands, but it does not definitively address whether the State's laws

15  apply to Indians on tribal lands.

16       For guidance, the Court looks to *California v. Cabazon Band of Mission*

17  *Indians*, 480 U.S. 202, 212-13 (1987).  One of the many points discussed in this

18  case was whether a federal statute, the Organized Crime Control Act (OCCA),

19  authorized the application of local gambling laws to tribal bingo enterprises.  *Id.* at

20  212.  Like the CCTA, the OCCA makes certain violations of state and local laws

21  violations of federal law.  *Id.*  The Supreme Court found that the State could not

22  rely on the federal law to permit the state's enforcement of the law—instead,

23  enforcement was up to the federal government alone.  *Id.* at 213-14.  Inherent in its

24  discussion is the Court's assumption that violations of state law apply to Indians

25  within Indian country (including tribal lands) even when they cannot be enforced,

26  and that they can still act as predicate offenses for federal statutes.  *Id.*  This may

27  resemble "bootstrapping" as Defendant has characterized it, but it remains the law.

28       The specific language of the CCTA defining "contraband cigarettes" reads

ORDER ON PRETRIAL MOTIONS * 18

"a quantity in excess of 60,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes. . . ." 18 U.S.C. § 2341(2).  Section 2342 makes it a federal crime for any person to knowingly "ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes[.]"  18 U.S.C. § 2342. Here, it appears the cigarettes at issue became "contraband" at the time of delivery, as the Court held in its earlier order, and the fact that they were delivered by a reservation Indian on trust land does not insulate Defendant from prosecution under the CCTA.  The Court denies Defendant Fiander's Motion to Dismiss on this ground.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Defendant Louie Mahoney's Motion to Suppress (Ct. Rec. 239) is **DENIED**.

2.  Defendant Louie Mahoney's Motion for Order Declaring 18 U.S.C. §§ 2341 & 2342 Unconstitutional for Vagueness (Ct. Rec. 256) is **DENIED**.

3.  Defendant Louie Mahoney's Motion to Dismiss Case Based on Discriminatory Enforcement (Ct. Rec. 235) is **DENIED**.

4.  Defendant Louie Mahoney's and Defendant Christine Mahoney-Meyer's Motions to Dismiss Case as Conduct Was Authorized by Tribal Laws and Approved by the U.S. Department of the Interior, Bureau of Indian Affairs (Ct. Recs. 238 & 245) are **DENIED**.

5.  Defendant Louie Mahoney's Motion to Dismiss Case Based on Treaty Violations (Ct. Rec. 254) is **DENIED**.

6.  Defendant Louie Mahoney's Motion to Dismiss Case (Ct. Rec. 251) is **DENIED**.

7.  Defendant Roger Fiander's Motion to Dismiss Case for Lack of Predicate

1  Violation per RCW 37.12.010 (Ct. Rec. 261) is **DENIED**.

2      8.  Defendant Louie Mahoney's Motion to Compel Disclosure of Any and

3  All Promises of Leniency (Ct. Rec. 229) is **DENIED**.

4      9.  Defendant Louie Mahoney's Motion for Disclosure of Identity and

5  Production of Informants (Ct. Rec. 231) is **DENIED**.

6      10.  Defendants Louie Mahoney, Christine Mahoney-Meyer, and Margaret

7  Jose's Motions for Joinder (Ct. Recs. 219, 233 & 247) are **GRANTED in part,**

8  **DENIED in part**.  The Court grants Defendants' motions to join the motions

9  currently before the Court, but will not grant a standing joinder order.  Defense

10 counsel should be able to keep track of the filings of co-Defendants and submit

11 motions to join in those that they believe have merit.

12     11.  Defendants Christine Mahoney-Meyer and Margaret Jose's Motions for

13 Discovery (Ct. Recs. 218 & 234) are **DENIED**.  Defendants may renew motions

14 for discovery in the event a specific problem or issue regarding discovery arises.

15     12.  Defendant Louie Mahoney's Motion for Extension of Time to File

16 Pretrial Motions and to Strike and Continue the Trial Date (Ct. Rec. 226,

17 Defendant Christine Mahoney-Meyer's Motion for Extension of Time to File

18 Pretrial Motions and to Strike and Continue Trial Date (Ct. Rec. 243), Defendant

19 Margaret Jose's Motion to Continue (Ct. Rec. 216) and Motion for Extension of

20 Time to File (Ct. Rec. 217), and Defendant Fiander's Motion to Continue (Ct. Rec.

21 224) are **GRANTED**.

22     13. The current trial date of October 2, 2006, is **stricken**.  Trial is **reset** to

23 **March 5, 2007, at 9:00 a.m.,** in Yakima, Washington.  Counsel shall appear in

24 chambers at 8:30 a.m.

25     14.  A new pretrial conference is **set** on **February 13, 2007, at 1:00 p.m.**, in

26 Yakima, Washington.

27     15.  All pretrial motions shall be filed on or before **January 8, 2007.**

28 Defendants may only file further pretrial motions upon a showing of good cause.

ORDER ON PRETRIAL MOTIONS * 20

The Government shall respond to any pretrial motions on or before **February 2, 2007**.

16.  Within seven (7) days from the date of this Order, Defendants shall file a waiver of speedy trial.

17.  Pursuant to 18 U.S.C. § 3161(h)(8)(A), the time between October 2, 2006, the current trial date, until March 5, 2007, the new trial date, is **DECLARED EXCLUDABLE** for purposes of computing time under the Speedy Trial Act.  The Court finds that the ends of justice served by such a continuance outweigh the interests of the public and Defendants in a speedy trial.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and forward copies to counsel.

**DATED** this 15th day of September, 2006.

*s/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CRIMINAL\2005\Mahoney\pretrial.motions.ord.wpd

ORDER ON PRETRIAL MOTIONS * 21